Bellacosa, J.
(dissenting). I respectfully disagree with the majority’s analysis and conclusion that the release in a prior Delaware action discharges defendant financial advisors from liability for professional malpractice to plaintiff shareholder in this action. The defendants here were not "expressly” named or otherwise identified in any manner, even by functional category, in the release, and they were not parties to the prior action; yet, they were fully known to all parties as essential participants in the corporate transaction.
In my view, under either New York or Delaware law requiring specificity, a clause purporting to release "anyone else”, at the very least is facially ambiguous barring summary judgment and necessitating extrinsic evidence to establish whether unnamed or otherwise unidentified parties were intended to be discharged. Courts are not able on this record to resolve this ambiguity as a matter of law, and thus I dissent and vote to affirm the Appellate Division’s denial of the motion to dismiss and would answer the certified question in the affirmative. The contrary holding of the majority contradicts and undermines General Obligations Law § 15-108, enacted to protect unwary releasors from unintended legal traps. This release set a sophisticated corporate financial trap and the court now snaps it shut, despite the statute.
In 1983, the management of a publicly held corporation, Metromedia, Inc., proposed a buyout. JWK Acquisition Corp., *26 a company the Metromedia management had organized, was to merge with Metromedia. The result was to be that Metromedia would be converted into a private corporation. A buy-out price of $40 per share was offered, based on an estimated $1.1 billion worth of the corporation’s assets. The proposal triggered a class action lawsuit in Delaware by common shareholders charging the management with a breach of fiduciary duty for using Metromedia’s assets to convert the company to their own interests. The suit charged that management had underestimated the worth of this publicly held corporation in setting the proposed purchase price at $40 per share.
Two investment banking firms, Shearson Lehman/American Express, Inc. and Bear, Stearns & Co., the defendants in the instant action, were retained by management to render specialized professional financial advice as to whether the proposed merger was fair to the common shareholders. The investment bankers agreed with management’s estimation that the company’s assets were worth $1.1 billion and, consequently, reported that the buy-out price was fair. The common shareholders were so advised. Armed with this advice and after some negotiation, the shareholders agreed to settle the Delaware action at an agreed-upon price of an additional 69 cents per share. As part of the stipulation of settlement, the plaintiff shareholders signed the release at issue here which discharged "all claims * * * that have been or could have been asserted by plaintiffs * * * against any defendant, or against any of the officers, directors, agents, attorneys, representatives, affiliates and general and limited partners of any defendant or against anyone else”. The Delaware court approved the settlement in June 1984, and shortly thereafter the shareholders approved the merger.
Over the next two years, the "new” privately held Metromedia sold off its assets, including seven television stations and several radio stations and other businesses. By July 1986 when the last business was sold, the aggregate consideration received for all of Metromedia’s businesses was not the $1.1 billion estimated by defendants and upon which the shareholders relied in settling their claims and in approving the merger. Rather, $4.5 billion was recouped for the new owners, reflecting a "miscalculation” by defendants of more than 300% or $3.4 billion. On the pure mathematical formula originally used to value the shares, that should have amounted to perhaps $84 per share more for the shareholders.
*27 In the face of the enormous personal profits reaped by Metromedia’s management in the sale of the corporate assets at the expense of the shareholders, plaintiff Wells, a former shareholder and a plaintiff in the Delaware action, instituted this action in New York against Shearson Lehman/American Express, Inc. and Bear, Stearns & Co., charging professional malpractice in evaluating the worth of the corporation and in advising that the buy-out price of $40 per share was fair. Defendants essentially contend they fall within the "anyone else” clause and are thus shielded from any liability, arising out of the Metromedia buyout.
We are unanimous that under common law a release given by an injured party to one tort-feasor discharged all others unless the releasor specifically stated a clear intention not to release a certain party. The common-law rule was abrogated by statute in both New York and Delaware via adoption of the Uniform Contribution Among Tortfeasors Act (New York General Obligations Law § 15-108; Del Code Annot, tit 10, § 6304 [a]). The central protective purpose of the Uniform Act is to invert the common-law rule so that other tort-feasors are not released unless the releasor expresses a clear intention to do so by express reference rather than by operation of law or by legal implication or interpretation.
The issue for us is simply whether the general term "anyone else” is ambiguous so as to bar summary judgment and to necessitate extrinsic evidence, at least as to whether the parties’ intent in the subject release is sufficiently expressed in accordance with the protective letter and spirit of General Obligations Law § 15-108; and, if so, whether the record in this case supplies extrinsic evidence, as it did in Chakov v Outboard Mar. Corp. (429 A2d 984 [Del]).
In my view, the use of the term "anyone else” in this case renders the release ambiguous as to its application to unnamed persons and to functional classes under either New York or Delaware law. The record in this litigation is incomplete and insufficient on the issue of intent in direct contradistinction to the statutes and to the Chakov analysis (supra). This should bar summary judgment to defendants in this case.
The New York version of the statute (General Obligations Law § 15-108 [a]) provides, "a release * * * given to one of two or more persons liable * * * in tort * * * does not discharge any of the other tortfeasors from liability * * * unless its terms expressly so provide” (emphasis added).
*28 The lean words of the statute are cogent and clear. They require the releasor to "expressly” designate by name or at least by some recognizable and specific description those other tort-feasors intended to be released. The majority’s strained construction of this remedial statute functionally nullifies the purpose of the statute and impermissibly excises the word "expressly” from the statute.
Support for the plain reading of the statute is readily available in the full legislative history of the statute. The Statutory Note to the 1972 amendment provides: Thé "purpose is to remove the uncertainty reflected in court decisions concerning the rule that a general release given to one joint tortfeasor discharges all others, and to eliminate the inequities of the present rule by providing that such a release will discharge only the persons and liabilities expressly referred to therein” (see, Historical Note of Commission, McKinney’s Cons Law of NY, Book 23A, General Obligations Law § 15-108, at 717 [emphasis added]). The majority’s construction of this statute reintroduces uncertainty and inequity.
Further support for this construction of the statute is supplied by the Law Revision Commission, the drafters of the very statutory language at issue and upon whose recommendation the legislation was adopted. "This bill simply provides that when a person signs a general release, he releases only the person or persons and the liabilities named therein,” (Mem of Assistant Executive Director of Law Revision Commission, Governor’s Bill Jacket, L 1972, ch 830 [emphasis added]). The nebulous and humongous "anyone else” in this case surely fails that test.
The New York County Lawyers’ Association also urged legislative and gubernatorial approval of the measure, noting, "This amendment makes it clear that only the tortfeasors that are named are released [emphasis added]”, and the Association of the Bar of the City of New York commented that under the proposed legislation "other tortfeasors are not to be the beneficiaries of a general release or covenant not to sue unless the releasor indicates a clear intention to do so by the inclusion of an express term to that effect in the document [emphasis added]” (see, Mem of New York County Lawyers’ Assn, Governor’s Bill Jacket, L 1972, ch 830; see also, Letter to Governor’s Counsel from Association of Bar of City of NY, Committee on State Legislation, Governor’s Bill Jacket, L 1972, ch 830).
*29 In sum, the majority’s rendition of the statute in this case is interdicted by the statute, transports the law back to where it was before the statute was enacted, and unnecessarily imposes an unfairness on the more vulnerable participants.
This is demonstrated even by the majority’s reliance on Oxford Commercial Corp. v Landau (12 NY2d 362), a case which it acknowledges as predating the statute. In that case, the subject release contained an agreement not to sue "any person whomsoever” except those specifically named. The court, applying the harsh common-law rule, held that because the defendants were not specifically named, they were discharged under the release. The majority refers to and relies upon the case as though the statute had never happened. However, New York law has come a long way in attempting to protect the investing public from financial wizards and manipulators — at least it should have.
Likewise, the Delaware version of the Uniform Act provides: "A release by the injured person of one joint tort-feasor, whether before or after judgment, does not discharge the other tort-feasor unless the release so provides” (Del Code Annot, tit 10, § 6304 [a]).
The leading cases construing the Delaware statute and providing useful guideposts here are a Delaware Supreme Court case, Chakov v Outboard Mar. Corp. (429 A2d 984, supra) and a Federal District Court case, Sellon v General Motors Corp. (521 F Supp 978 [US Dist Ct, Del]), which relied on Chakov. In both, the courts were called upon to determine on summary judgment motions whether a release employing the general term "all other persons, firms or corporations” released the defendants who were not specifically named in the release. In both cases, the courts looked to the language of the release and the course of negotiations leading up to the respective releases to determine whether the parties had manifested a clear intent that the release embrace the tortfeasor then seeking its protection. The rules which emerged were that if upon review of the motion papers there was conclusive extrinsic evidence establishing a clear intent to release the unnamed parties, then summary judgment may be granted; if, on the other hand, no clear intent could be gleaned from the language of the release itself or coupled with consideration of the course of negotiations, then a genuine issue of fact exists and summary judgment should be denied (see, Sellon v General Motors Corp., 521 F Supp, supra, at 986; *30 Chakov v Outboard Mar. Corp., 429 A2d, supra, at 985-986). The key distinction in result and analysis between Chakov and Sellon is that in Chakov, the extrinsic evidence relating to the "course of negotiations” clearly established the parties’ intent with respect to the release. Indeed, the parties in Chakov (supra, at 986) stipulated "that the record on the question of intention [was] complete”. In the instant case, we have no evidence and no idea what the plaintiffs’ intent was in respect to the nondefendants (defendants here) in the predicate Delaware class action who played a sophisticated fiduciary role in what turned out to be a bonanza for corporate management against the interests of the shareholders.
In Sellon, interestingly, the court, after examining the language of the release as well as the course of negotiations, found the record inadequate to support a ruling on the intended scope of the release and concluded that there was a genuine issue of material fact, thus precluding a grant of summary judgment. Yet, the Delaware statute does not even have the extra "kicker” of the New York statute calling for "express” references.
Applying this analysis and history to the instant case, and bearing in mind that plaintiff is entitled to the benefits of all reasonable inferences as to the pleadings, I conclude that the Appellate Division correctly reversed the trial court’s grant of relief to defendants. I would not summarily grant relief to plaintiff either, but would deny as to both as the Appellate Division did. The language of the release, when viewed in the context of what the record discloses of the negotiation process and the participation by defendants in this action, fails to establish as a matter of law plaintiff’s intent to release the financial advisors from potential professional malpractice liability. Their fiduciary role and conflicted allegiance is so suspect as to render the likelihood of such intent highly doubtful, but both sides should be afforded the opportunity to present proof at a trial. That is all I would decide and certainly would not erect either directly or by precedential implication some unsettling and unbending rule of law. It always lays in the hands of the participants to simply and clearly express their intentions in accordance with the remedial statute.
Moreover, an examination of the course of negotiations in this case does not clear up the ambiguity created by the language of the release itself. This record already contains *31 significant extrinsic evidence in favor of plaintiff’s contention that she never intended the release to discharge these defendants. Notably, while the release itself fails to single out "experts” or "advisors” in its litany of those released as the statute requires, those categories were expressly identified and employed in a different part of the settlement agreement in which these very defendants sought to escape liability for certain fees and expenses. That contextual clash alone creates an ambiguity about this release instrument under this statute in this case.
The irony is startling. The statute requires an express listing and there is none. The release contains no express listing when names, active participants and functional categories of persons in the underlying financial transaction — all well known at the time the release was drawn — could have been easily inserted and even were in other parts of the release. Yet, those now escaping liability despite the important consumer, public protection statute, who were in the best position to protect themselves in the first instance and had excellent legal advisers available to draft a statutorily conforming instrument, instead are additionally rewarded with an overly generous statutory interpretation which, as to these parties and as to all others from now on, nullifies the whole purpose of the statute.
I vote to affirm.
Judges Simons, Alexander, Titone and Hancock, Jr., concur with Judge Kaye; Judge Bellacosa dissents and votes to affirm in a separate opinion; Chief Judge Wachtler taking no part.
Order reversed, etc.